**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**WILLIAM T. HOLIDAY,**

      **Petitioner,**

**vs.**

                                **CASE NO. 3:08cv190-RV/WCS**

**WALTER McNEIL,**

      **Respondent.**

_____/

### REPORT AND RECOMMENDATION

This is an amended petition for writ of habeas corpus filed by William T. Holiday pursuant to 28 U.S.C. § 2254.  Doc. 5 (with attached memorandum, pp. 26-62 on ECF). Petitioner challenges his convictions for sexual battery and burglary of an occupied dwelling in the Circuit Court of the First Judicial Circuit, in and for Escambia County, Florida, case number 04-4875-CF.[1]  *Id.*  Respondent filed an answer and the record  in paper form.  Doc. 26.  Petitioner filed a traverse.  Doc. 29.  He also filed another

_____

[1] Petitioner states that he is serving a 30 year prison sentence.  Doc. 5, p. 1.  He was actually sentenced to 15 years in prison for sexual battery and a concurrent 5 year term for burglary, followed by 15 years of probation.  Ex. A, pp. 148, 150 (judgement); Ex. C (initial brief on direct appeal), p. 2.

memorandum. Doc. 40. Respondent concedes that the petition was timely filed. Doc. 26, p. 5.

## Section 2254 Standard of Review

"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).[2] But habeas corpus relief may be granted only if Petitioner has properly exhausted his federal claims in state court. § 2254(b)(1) and (c). To do so the federal claim must be fairly presented to the state court, to give the State the opportunity to pass upon and correct alleged violations of federal rights. *See* Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (citations omitted); Duncan v. Henry, 513 U.S. 364, 365-366, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995). While it is not necessary that the petitioner cite "book and verse" of the Constitution, the state court must be alerted to the fact that a federal constitutional claim is raised. Duncan, 513 U.S. at 365-366, 115 S.Ct. at 888 (citations omitted); *see also* McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005) (holding that a petitioner must "do more than scatter some makeshift needles in the haystack of the state court record") (citations omitted).

The petitioner also "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999); Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (applying

---

[2] If no constitutional claims are raised, then §2254 is inapplicable and the exhaustion inquiry is irrelevant. Engle v. Isaac, 456 U.S. 107, 120, n. 19, 102 S.Ct. 1558, 1567, n. 19, 71 L.Ed.2d 783 (1982).

this one complete round requirement to state collateral review process as well as direct appeal). If a claim is not fairly presented through one complete round of state court review and review is no longer available in state court, it is procedurally defaulted and the petitioner must demonstrate cause and prejudice for the default *or* a miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).[3]

For claims that were properly exhausted and adjudicated in state court, this court's review is limited. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute). Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

---

[3] The miscarriage of justice exception applies only to extraordinary cases, where a constitutional violation has probably resulted in conviction of an innocent person. McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991). *See also* House v. Bell, 547 U.S. 518, 536-537, 126 S.Ct. 2064, 2076-2077, 165 L.Ed.2d 1 (2006) (explaining what must be shown to demonstrate actual innocence as a "gateway" to review of a defaulted claim).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also*, Carey v. Musladin, 549 U.S. 70, 74-77, 127 S.Ct. 649, 653-654, 166 L.Ed.2d 482 (2006) (§ 2254 refers to holdings, rather than *dicta*, of the Supreme Court, collecting cases to show that "[r]eflecting the lack of guidance from this Court, lower courts have diverged widely in their treatment of defendants' claims.").

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146 L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case

differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850. *See also*, Panetti v. Quarterman, 551 U.S. 930, 953-954, 127 S.Ct. 2842, 2858-2859, 168 L.Ed.2d 662 (2007) (discussing the unreasonable application standard) (citing Williams, other citations omitted).

"Avoiding these pitfalls [described in Williams v. Taylor] does not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." Holland v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736, 2738, 159 L.Ed.2d 683 (2004).

The basic law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984). Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850. Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1204 (2001).  *See also* Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citing Chandler).  There are no rigid requirements or absolute duty to investigate a particular defense.  Fugate v. Head, 261 F.3d at 1217.

> Indeed, "[c]onsidering the realities of the courtroom, more is not always better.  Stacking defenses can hurt a case.  Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

*Id.*

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

A state court's adjudication of an ineffective assistance claim does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently.  Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852.  To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams).  "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

Petitioner contends that his appellate counsel was ineffective for failing to argue a denial of a speedy trial provided by state law .  Doc. 5, p. 6 (p. 5 on ECF[4]); memorandum, doc. 5, pp. 3a-3e (pp. 37-41 on ECF).  The claim was presented by a petition for writ of habeas corpus in the appellate court and denied on the merits without an opinion.  Exs. G, H, I.  Respondent concedes that Petitioner exhausted his state court remedies as to this claim.  Doc. 26, p. 6.

Petitioner was originally charged by information with sexual battery involving threat of force likely to cause serious personal injury in violation of FLA. STAT. § 794.011(4)(b), a first degree felony, and burglary of an occupied dwelling in violation of FLA. STAT. §§ 810.02(1)(b) and (3)(a), a second degree felony.  Ex. A, p. 1.

---

[4] ECF refers to the electronic case filing system, the electronic docket.

On May 6, 2005, Petitioner's trial attorney filed a notice of expiration of time for a speedy trial pursuant to Florida's speedy trial rule, FLA. R. CRIM. P. 3.191(p). Ex. A, p. 13. The notice stated that Petitioner had been arrested on October 25, 2005, and that more than 175 days had elapsed since then without a trial. *Id.* Rule 3.191(a) provides in part that:

> every person charged with a crime shall be brought to trial . . . within 175 days of arrest if the crime charged is a felony. If trial is not commenced within these time periods, the defendant shall be entitled to the appropriate remedy as set forth in subdivision (p).

FLA. R. CRIM. P. 3.191(a). Rule 3.191(p) provides in relevant part:

*       *       *

> (2) At any time after the expiration of the prescribed time period, the defendant may file a separate pleading entitled "Notice of Expiration of Speedy Trial Time," and serve a copy on the prosecuting authority.
>
> (3) No later than 5 days from the date of the filing of a notice of expiration of speedy trial time, the court shall hold a hearing on the notice and, unless the court finds that one of the reasons set forth in subdivision (j) exists, shall order that the defendant be brought to trial within 10 days. A defendant not brought to trial within the 10-day period through no fault of the defendant, on motion of the defendant or the court, shall be forever discharged from the crime.

FLA. R. CRIM. P. 3.191(p)(2) and (3).

On Monday, May 23, 2005, Petitioner filed a motion for discharge. Ex. A, pp. 14-15. The court heard the motion on the same day. Ex. B, cover page and p. 17. The court noted that the notice of expiration was filed on May 6, 2005, and the last day of the 15 day period (5 days plus 10 days) was a Saturday (May 21, 2005), so May 23, 2005, was the first available business day after May 21st "during the recapture period." *Id.*, p. 17. The court observed that the notice of expiration was heard at a calendar call

on Friday, May 13, 2005, which was within 5 business days of the date that the notice of

expiration was filed, but not 5 calendar days. *Id.*, p. 18. The "Progress Docket Printout"

is the first document in Ex. J (not Ex. A as stated by Respondent), which is the record

on appeal from denial of Petitioner's Rule 3.850 motion. Entry 54 states: "Calendar call

on notice of expiration for speedy trial." Entry 55 states that the jury trial remained set

for May 31, 2005. Entry 64 states that jury selection in the case was set for Monday,

May 23, 2005, "on speedy trial."

The trial court concluded:

This case was ultimately placed on the trial calendar in this division for today's date, which is May the 23rd. As I noted, the 15th day would have expired on – would have elapsed this past Saturday, over the weekend, so today is the last available date, so the motion for discharge is denied.

Ex. A, p. 18. The jury apparently was selected and placed under oath later on May 23,

2005. *Id.*, p. 21 (jury is called in and seated[5]).

The state decision followed Florida law. <u>State v. Salzero</u>, 714 So. 2d 445 (Fla.

1998) (notice filed on August 5, 1996, hearing on notice held on August 6, 1996, trial

commenced on August 19, 1996, over 10 days after the hearing, but 14 days from the

filing of the notice, no speedy trial violation). The court in <u>Salzero</u> said: "We hold that a

violation of the five and ten-day periods provided in rule 3.191(p)(3) is harmless if a

defendant is actually brought to trial within fifteen days of filing his notice of expiration."

*Id.*, at 447.

The appellate claim lacked merit under Florida law, and appellate attorney error

(or prejudice to the outcome, for that matter) has not been shown. For these reasons,

---

[5] Respondent omitted the jury selection pages of the transcript so that date of the juror's oath is not in this record. Doc. 26, p. 2 n. 2.

Petitioner has not shown that the First District Court of Appeal's rejection of this claim of ineffective assistance of appellate counsel has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground Two**

Petitioner contends that the trial court erred in denying his motion to suppress statements he made to Escambia County Sheriff's Deputy Joshua Hendershot at the time of his arrest.[6]  Doc. 5, p. 7 (p. 6 on ECF); doc. 5, memorandum, pp. 3f-3i and several pages from Petitioner's brief on direct appeal, Ex. C (pp. 42-51 on ECF). Respondent states that Petitioner exhausted his state court remedies as to this claim by moving to suppress his statement at trial and by appealing the denial on federal grounds.  Doc. 26, p. 11.

The trial court held a suppression hearing.  Ex. B, pp. 139-160.  Deputy Sheriff Hendershot testified that he was driving in downtown Pensacola on March 24, 2004, when he was flagged down by people in the street.  Ex. B, pp. 139-140.  He said a female, who was later identified as the victim, was screaming.  *Id.*, p. 140.  He said that a couple of people "described a black male and certain articles of clothing" and the victim said she was certain that this person was the rapist.  *Id.*  He said that they were

_____

[6] As set forth ahead, Deputy Sheriff Hendershot testified at trial that he approached Petitioner shortly after the rape, and Petitioner told Hendershot that he had been staying at his sister or aunt's house before the rape, and had just walked to the store to purchase "a blunt or a cigar, and then he was going to return back to there." *Id.*, pp. 267-268.  These were unfavorable admissions since at trial, Petitioner testified that he was staying at the same motel as the victim and that he had consensual sex with the victim in exchange for drugs; he denied that he told Hendershot that he had just come from a relative's home.  *Id.*, pp. 386, 388-389, 391, 397-398, 401-402, 404.

right "at the hotel, just east of Pace Boulevard on Cervantes," and a small grocery store was across the street. *Id.* The witnesses said that suspect went into that grocery store and was still in there. *Id.*, p. 141. Deputy Hendershot did not know when the offense had happened and did not know if there was a crime scene, so he radioed EMS because his first thought was the health and safety of the victim. *Id.* He said the victim was "hyperventilating. She could have been having a heart attack at that point, for all I knew. I mean, she was gasping for air." *Id.*, p. 142.

Deputy Hendershot said he was driving his marked Sheriff's car, but was not in uniform. *Id.*, p. 141. He then drove to a parking lot. *Id.*, p. 142. As he passed the store, he saw a black male with exactly the same clothing exiting the store. *Id.*, p. 145. The suspect saw the marked car and backed into the store. *Id.* Deputy Hendershot hid his car in the parking lot, and the suspect existed the store. *Id.* Hendershot said that the suspect walked "directly towards me." *Id.*, p. 146. When he got close, Hendershot "asked if I could talk to him for a minute." *Id.* They were standing right next to his patrol vehicle. *Id.* Hendershot said that he was in the city limits, did not "know what I've got," and did not want to interfere with a city police investigation. *Id.* He made "small talk" with the suspect (who turned out to be Petitioner). *Id.* Hendershot explained:

> I mean, certainly I wasn't going to ask him any questions about the alleged crime because he wasn't even Mirandized. So I basically just made small talk with him until the Pensacola Police Department could arrive.

*Id.* Hendershot said that Petitioner was "concerned that he may be in trouble," asked more questions than Hendershot did, and said: "man, I'm just coming from my sister's house or auntee's house, or something like that, I just went to get me a blunt, come back – or, you know, a cigar – you know, I'm just going back there." *Id.*, pp. 147, 157.

Hendershot said that Petitioner was very inquisitive and "never tried to leave." *Id.* As Hendershot talked with Petitioner, the city police arrived. *Id.* At that point, Petitioner became very nervous and agitated. *Id.* Hendershot said that while he was talking with Petitioner, the people in the street were pointing, yelling, and screaming, "that's him, that's him." *Id.*, p. 148. Petitioner said: "like man, I don't even know those people." *Id.*, p. 149. Hendershot told Petitioner that there was a woman in the group of people who "claims that you raped her, you know, and you need to hang out here and talk to the police." *Id.*, p. 157. Hendershot also said that he told Petitioner that "there's been some strong accusations made, you just need to calm down, talk with these officers and answer their question, you know, they're investigating something." *Id.*, p. 148.

Hendershot reiterated that he did not go into detail because he did not know dates, times, occurrences, or anything. *Id.* He said:

> I just know she alleged him to have sexually battered or raped her. He fit the description. I detained him, as far as consensually, and certainly didn't have to hold him down, chain him down or anything, because he asked me more questions than I ever asked him.

*Id.*, pp. 148-149. Hendershot said that he felt that he had probable cause to detain Petitioner, but he did not detain him. *Id.*, p. 150. Hendershot said that if Petitioner had tried to leave, he would have detained him; but Petitioner did not try to leave, but stayed there asking Hendershot questions. *Id.*, p. 151. Had Petitioner walked away, Hendershot said he would have stopped him. *Id.*, p. 153. He said that Petitioner "positioned himself around the corner like an exit route, like he wanted to leave," but he never left. *Id.*, pp. 155-156.

At the conclusion of the hearing, the trial court made the following findings of fact

and conclusions of law:

> Well, based upon the evidence presented, taking into consideration the circumstances of the event, the Court finds that Officer Hendershot, who is an Escambia County  Sheriff's deputy, was driving down a city of Pensacola Street, was flagged down by an individual on the street.  The individual was a woman who is clearly excited and disturbed, and reported in apparently halting language that she had been raped, and between her and others who were in the vicinity of her gave a description of an individual who had gone across the street to the grocery store in question.
>
> The officer called for EMS and apparently called for the City of Pensacola to assist, and once EMS arrived, proceeded to cross the street to drive by the store.
>
> While driving by the store, the defendant, who matched the description to a "T," apparently started to walk out of the door of the store, but then retreated back into the store.  The deputy continued on by, across the side street and parked in an adjacent parking lot, got out of his vehicle, and as he got out of the vehicle, the defendant apparently exited from the front of the store, walked to the police officer without anything being said by the officer.
>
> As the defendant approached the officer, looking straight at him, walking right up to him, the officer asked –- asked, talk to you for a few seconds. The defendant walked up and began conversing about general matters, how you doing, where you going, what's happening, and at this point, citizens across the street are indicating that's the guy, yelling and walking out into the street, and the officer, during the course of the matter, merely –- from the evidence I heard, a couple of notes at most –- informed the defendant that apparently he was being accused by a woman in the crowd across the street of a rape charge.
>
> The police officers were coming.  The defendant appeared like he was thinking about leaving, but did not.
>
> The officer never told him he could not go, never put his hands on him, never detained him, never really questioned him at all about the incident, per se, and accordingly, I do find that this is a classic citizen contact, that the defendant was not detained, that therefore there was no obligation to provide him with Miranda warnings.  Motion to suppress denied.

Ex. B, pp. 166-168.  This ruling was affirmed on appeal without opinion.  Ex. E.

The trial court's factual findings are presumed to be correct. 28 U.S.C. §
2254(e)(1). Petitioner has not rebutted this presumption by clear and convincing
evidence. Indeed, the findings accurately track the testimony of Deputy Hendershot.

Pre-custodial questioning does not require *Miranda* warnings. United States v.
Street, 472 F.3d 1298, 1309 (11th Cir. 2006), *cert. denied*, 551 U.S. 1138 (2007).

> "A defendant is in custody for the purposes of *Miranda* when there has
> been a 'formal arrest or restraint on freedom of movement of the degree
> associated with a formal arrest.' " *Id.* [*United States v. Brown*, 441 F.3d
> 1330 (11th Cir.2006)] at 1347 (*quoting California v. Beheler*, 463 U.S.
> 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)); *see also
> United States v. McDowell*, 250 F.3d 1354, 1362 (11th Cir.2001) (Whether
> a suspect is in custody "depends on whether under the totality of the
> circumstances, a reasonable man in his position would feel a restraint on
> his freedom of movement to such extent that he would not feel free to
> leave." (quotation marks and alterations omitted)). "The test is objective:
> the actual, subjective beliefs of the defendant and the interviewing officer
> on whether the defendant was free to leave are irrelevant." *United States
> v. Moya*, 74 F.3d 1117, 1119 (11th Cir.1996). "[U]nder the objective
> standard, the reasonable person from whose perspective 'custody' is
> defined is a reasonable innocent person." *Id.* In applying this test there
> are several factors we are to consider, including whether "the officers
> brandished weapons, touched the suspect, or used language or a tone
> that indicated that compliance with the officers could be compelled."
> *United States v. Long*, 866 F.2d 402, 405 (11th Cir.1989). It is a totality of
> the circumstances determination. *Brown*, 441 F.3d at 1347, 1349.

472 F.3d at 1309.

On the facts found by the trial court, Petitioner was never placed into custody.
His freedom was never officially restrained. Deputy Hendershot may have intended to
detain Petitioner had he attempted to leave. But Petitioner did not attempt to leave. At
the time Petitioner made his statements to Hendershot, no arrest had occurred.
Petitioner voluntarily remained talking to Deputy Hendershot. Deputy Hendershot

conducted only a *Terry*[7] stop, not an arrest.  Further, the circumstances of that

encounter with Petitioner were not so intrusive or coercive as to require *Miranda*

warnings.  United States v. Acosta, 363 F.3d 1141, 1150 (11th Cir. 2004).  For these

reasons, Petitioner has not shown that the state court's adjudication of this federal claim

has "resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United

States."  § 2254(d)(1).

**Ground Three**

Petitioner contends his trial counsel was ineffective for failing to obtain a medical

absorption test and for failing "to raise these preserved issues on direct appeal."  Doc.

5, p. 9 (p. 8 on ECF); doc. 5, memorandum, pp. 3j-3l (pp. 52- 54on ECF).  In his

memorandum, Petitioner explains that what he means is that the prosecutor asked him

during trial whether he and the victim had used a lubricant during the allegedly

consensual sexual intercourse.  *Id.*, p. 3k (p. 53 on ECF).  He does not cite the portion

of the record where this testimony occurred.  He alleges from this that his trial counsel

was ineffective for failing to obtain an independent medical test on the semen recovered

from the victim, presumably to determine whether it contained evidence of a lubricant.

Doc. 5, pp. 3k-3l (pp. 53-54 on ECF).

---

[7] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  "A brief stop
of a suspicious individual, in order to determine his identity or to maintain the status quo
momentarily while obtaining more information, may be most reasonable in light of the
facts known to the officers at the time."  Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct.
1921, 1923, 32 L.Ed.2d 612 (1972) (citing Terry, 392 U.S. at 21-22).

Petitioner filed a Rule 3.850 motion. Ex. J, pp. 1-22. This claim was not in that motion. *Id.* With leave of court, Petitioner amended his original Rule 3.850 motion. *Id.*, pp. 370A-394. This claim was not in the amended motion. *Id.*

On April 8, 2008, Petitioner filed a petition for writ of habeas corpus in the trial court. Ex. N. His conviction had been affirmed on direct appeal on July 31, 2006. Ex. E. Citing FLA. R. CRIM. P. 3.850(f),[8] the court dismissed the petition as a successive Rule 3.850 motion. Ex. O. Petitioner did not appeal this denial of his motion.

The claim, therefore, is procedurally defaulted. The state court rejected the claim, relying upon an adequate state ground,[9] and no appeal was taken.[10]

Petitioner has not shown cause or prejudice for this default. "The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," for example "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by

---

[8] "A second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules." FLA. R. CRIM. P. 3.850(f).

[9] Logan v. State, 1 So.3d 1253, 1254 (Fla. 4th DCA 2009).

[10] The "one complete round" exhaustion requirement set forth in O'Sullivan v. Boerckel, *supra*, applies to post-conviction review as well, and a prisoner must appeal the denial of post-conviction relief in order to properly exhaust state remedies. Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979) (Florida prisoner must appeal denial of Fla.R.Crim.P. 3.850 relief to exhaust remedies); LeCroy v. Secretary, Florida Dept. of Corrections, 421 F.3d 1237, 1261 (11th Cir. 2005), *cert. denied*, 126 S.Ct. 1458 (2006); Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) ("Boerckel applies to the state collateral review process as well as the direct appeal process").

officials,' made compliance impracticable, would constitute cause under this standard."
Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)
(citations omitted); Coleman, 501 U.S. at 753, 111 S.Ct. at 2566 (citing Murray).
Petitioner has not shown cause for his default.  A pro se litigant's lack of adequate legal
training is not cause.  Harmon v. Barton, 894 F.2d 1268, 1274-1275 (11th Cir. 1990);
Alexander v. Dugger, 841 F.2d 371, 374 n. 3 (11th Cir. 1988); McCoy v. Newsome, 953
F.2d 1252, 1258-1260 (11th Cir. 1991), *cert. denied*, 504 U.S. 944 (1992); Jenkins v.
Bullard, 210 Fed.Appx. 895, 901 (11th Cir. Dec 13, 2006) (not selected for publication in
the Federal Reporter, No. 06 10646).  Petitioner could have made this claim in his first
Rule. 3.850 motion.

Petitioner cannot show prejudice either.  At trial Defendant testified that he had
consensual sex with the victim.  Ex. B, pp. 398, 404.  He did not provide any details.  *Id.*
He testified, however, that in effect he had asked to have anal sex with the victim in
exchange drugs.  *Id.*, p. 389.  Petitioner did not testify whether lubricant was used (or
not used), and he was not asked about it on cross examination.  *Id.*, pp. 404-413.  Nor
did he testify that he used a lubricant.  The factual foundation for this claim, therefore, is
lacking.  Having failed to develop the facts in state court, Petitioner is not entitled to
prove these facts with an evidentiary hearing in this court.  § 2254(e)(2).  This court,
therefore, cannot reach the merits of the claim.

**Ground Four**

Petitioner alleges prosecutorial misconduct. Doc. 5, p. 10 (p. 9 on ECF). In the memorandum attached to doc. 5, Petitioner asserts that the prosecutor said that he was a drug dealer. Doc. 5, memorandum, p. 3n (p. 57 on ECF). He asserts that this assertions were "unfounded." *Id*. He notes that his trial counsel objected, preserving the claim for review on appeal. *Id*.

At trial, Petitioner was asked on cross examination whether he had been convicted of a felony and how many, and he said yes, two. Ex. B, p. 407. He then was asked: "And so now we've got that you're a convicted felon, you told us that you're a drug dealer, basically." *Id*. Petitioner twice denied being a drug dealer. *Id*. Counsel objected to the question and obtained a cautionary instruction that the evidence that Petitioner was a convicted felon went only to his credibility. *Id*., pp. 407-408. Petitioner's attorney repeated his objection concerning the assertion that Petitioner was a convicted felon and a drug dealer, and that objection was overruled. *Id*., p. 408. Petitioner again denied that he bought and sold drugs, but admitted that he bought drugs for the victim, to trade for sex. *Id*., pp. 408-410.

Respondent contends that this claim is procedurally defaulted because not presented to the state court until Petitioner filed his petition for writ of habeas corpus in the trial court, the petition which, as explained above, the trial court found to be a successive Rule 3.850 motion. Doc. 26, p. 21. That default argument is not persuasive. Counsel objected at trial. Ex. B, pp. 407-408.

The procedural default was in failing to present this objection again on direct appeal. Ex. C. It was not presented on appeal. *Id*. Respondent asserts that the

underlying claim did not surface until Petitioner filed a second petition for writ of habeas corpus in the appellate court, claiming that his appellate counsel was ineffective for failing to raise this claim on direct appeal.  Doc. 26, p. 21, n. 14, citing Ex. P.  The appellate court treated this entire petition as alleging ineffective assistance of appellate counsel.  Ex. Q.  The court then dismissed the petition, citing Fla. R. App. P. 9.141(c)(5)(C).  Ex. R.  That rule provides:

> The court may dismiss a second or successive petition [alleging ineffective assistance of appellate counsel] if it does not allege new grounds and the prior determination was on the merits, or if a failure to assert the grounds was an abuse of procedure.

Fla. R. App. P. 9.141(c)(5)(C).

The dismissal of this petition, therefore, was on state procedural grounds, and whatever claim Petitioner might have had with respect to the cross examination is procedurally defaulted.  Petitioner has not shown cause for his procedural default.  If the asserted cause for default on appeal was that his appellate counsel was ineffective for failing to raise this misconduct claim, that claim of ineffectiveness should have been asserted in Petitioner's first petition for writ of habeas corpus alleging other claims of ineffective assistance of appellate counsel.  Moreover, before it can constitute cause for a default the ineffectiveness claim itself must be properly exhausted and not defaulted, which is not shown here.  Edwards v. Carpenter, 529 U.S. 446, 452-53, 120 S.Ct. 1587, 1591-92, 146 L.Ed.2d 518 (2000) (also noting that, "[t]o hold, as we do, that an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted is not to say that that procedural default may not *itself* be excused if the prisoner can satisfy the cause-and-prejudice

standard with respect to *that* claim."  at 453, 1592.  This court cannot reach the merits of this claim.

**Ground Five**

The petition form itself does not contain a ground five.  Doc. 5.  Respondent represents that ground five asserts that trial counsel was ineffective for failing to object to "the expert testimony of Detective Nixon."  Doc. 26, p. 22.  Petitioner's ground five in his attached memorandum (which is a photocopy of the petition for writ of habeas corpus deemed by the trial court to be successive, Ex. N), does not mention testimony from Nixon.  Doc. 5, memorandum, pp. (unnumbered page following p. 3n)- 3r (pp. 57-61 on ECF).  Though the allegations of memorandum ground five ramble, Petitioner concludes that his appellate counsel was ineffective for failing to argue his speedy trial and *Miranda* claims.  *Id.*, p. 3q (p. 60 on ECF).  The claim with regard to *Miranda* is the same as ground one, and is without merit for the reasons discussed above.  The claim regarding speedy trial is incorrect.  Petitioner's appellate counsel did present a speedy trial claim on appeal.  This ground provides no relief.

**Certificate of Appealability**

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right.  § 2253(c)(2);

Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, I

recommend that the court deny a certificate of appealability in its final order.

The second sentence of  new Rule 11(a) provides: "Before entering the final

order, the court may direct the parties to submit arguments on whether a certificate

should issue."  If there is an objection to this recommendation by either party regarding

a certificate of appealability, the party may bring this to the attention of the district judge

in the objections permitted to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that this 28 U.S.C. § 2254 petition for writ of

habeas corpus filed by William T. Holiday, challenging convictions for sexual battery and

burglary of an occupied dwelling in the Circuit Court of the First Judicial Circuit, in and

for Escambia County, Florida, case number 04-4875-CF, be **DENIED WITH**

**PREJUDICE**, and that a certificate of appealability pursuant to § 2254 Rule 11(a) be

**DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on January 7, 2010.


<u>s/     William C. Sherrill, Jr.</u>
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.